**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br>Plaintiff,<br><br>v.<br><br>**JUAN JOSE PAGAN-BETANCOURT,**<br>Defendant. | CRIMINAL NO. 17-514 (JAG) |

## UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM

TO THE HONORABLE COURT:

COMES NOW the United States of America through its undersigned attorneys, and very respectfully states, alleges and prays as follows:

### I.   INTRODUCTION

1.   On August 13, 2017, a Grand Jury indicted Juan Jose Pagan-Betancourt (hereafter, "Defendant") for possession of a machine gun in violation of 18 U.S.C. § 922(o).

2.   On June 27, 2018, Defendant pled guilty to the single Count in the Indictment pursuant to a straight plea. (Docket Entry No. 33). On September 26, 2018, the United States Probation Office (USPO) issued the pre-sentence investigation report (PSR) in this case. (Docket Entry No. 40).

3.   For the reasons below, the United States respectfully submits that Defendant should be sentenced to a total of **24 months of imprisonment**. A sentence of 24 months will reflect the seriousness of the offense, will promote respect for the law, will protect the public from further crimes by Defendant, and will adequately address the issues of deterrence and punishment.

## II. FACTUAL BACKGROUND

4. On August 18, 2017, at approximately 8:20 p.m., officers from the Puerto Rico Police Department in Carolina were conducting a preventive drive-by in the Catañito Public Housing Project (PHP) in Carolina, Puerto Rico. After entering the PHP, PRPD officers went towards a group of men standing at the corner of one of the buildings. As the PRPD officers were approaching, immediately, one of the men who was the defendant Pagan-Betancourt ran away between the buildings and a PRPD officer observed him carrying a firearm in his hand while running. PRPD officers conducted a pursuit on foot and on motorcycles. While on pursuit, the same PRPD officer who was chasing him on foot saw him throw the firearm in one of the corners of the PHP. The defendant was later apprehended and arrested. A PRPD officer on foot recovered the firearm from where he saw the defendant throw it. The defendant had on him a rose-gold LG cellphone.

5. The firearm seized is a Glock 34, 9mm caliber, loaded with an ***extended ammunition magazine*** of 19 rounds of 9mm ammunition with one in the chamber, serial number LWV158. The firearm contains a ***clearly visible*** part known in the streets as a "chip" that modifies the firearm to fire automatically more than one shot with the single pull of the trigger. On August 19, 2017, HSI agents advised the defendant Pagan-Betancourt of his Miranda warnings. Before the defendant requested an attorney present, he freely and voluntarily stated that he wanted to say that he was student and that ***while running away from the police the firearm he was carrying fell***.

## III. ARGUMENT

After *United States v. Booker*, 543 U.S. 220 (2005), sentencing involves a three-step process. *United States v. Davila-Gonzalez*, 595 F.3d 42, 46 (1st Cir. 2010). First, the Court must

continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*. *Id.* Second, the Court must formally rule on any departure request by any of the parties. *Id.* Finally, the Court is required to consider the factors delineated in 18 U.S.C. § 3553(a) as well as any other relevant considerations and determine what sentence, whether within, above, or below the guideline sentencing range, appears appropriate. *Id.*

Under 18 U.S.C. § 3553(a), sentencing courts must "impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The relevant factors a sentencing court should consider in determining an appropriate sentence are: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training or medical care; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range established by the sentencing guidelines; (5) any pertinent policy statement; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a)(1)-(7).

The United States agrees with the Probation Office's analysis with respect to Defendant's Guideline Sentencing Range of 15 after calculating the corresponding base offense level for the charge of conviction and applying a reduction for Defendant's acceptance of responsibility. A base offense level of 15 with a criminal history of I entails a sentence of 18 to 24 months of imprisonment.

3

It is undeniable that in Puerto Rico, crime far exceeds the known limits on the mainland at this moment in time. Violent crimes and murders are occurring at all hours of the day, in any place of the island, even on congested public highways, in shopping centers, and social events. Sadly, there have been way too many innocent victims that have been caught by stray bullets just because they were "in wrong place at the wrong time".

Firearms such as the ones seized from Defendant, in the possession of individuals that have no training in the proper use of weapons, represent a serious risk to the life of many citizens, particularly in cases such as in the instant case, where the defendant was carrying a machine gun loaded with 19 rounds of 9mm caliber ammunition. ***The Court should consider the particular violent crime rate in Puerto Rico and the fact that Defendant was carrying a machine gun in a common area of a Public Housing Project; an area designed for children to play. Furthermore, Defendant tried to flee from the agents and discard the firearm near the park area where any child could have found it if the agents had not found it first.***



Deterrence *is* crucial in this case. *United States v. Flores-Machicote,* 706 F3d. 16 (1st Cir. 2013) has been cited by the Court of Appeals in many of the weapons cases in which upward variances have been sustained, based on the fact that the Commonwealth of Puerto Rico has a high risk of criminal incidence which justifies increased penalties for firearm violations. In *Flores-Machicote,* the first circuit held that deterrence is an important factor, and in that sense the District Court may impose a variant sentence to deter similar conduct by other individuals. *Id* at 22. The circuit panel affirmed the District Court's finding that the whole island of Puerto Rico is a high crime area and deterrence of firearm violations may be sought and achieved through variant sentences that significantly increase the guideline sentencing range ordinarily established for those violations. *Id* at 23. Furthermore, in *Flores-Machicote* the circuit explained, that a finding that deterrence of criminal conduct was warranted in light of a tendency of impunity enjoyed by criminals who discern a safe-harbor in overly-lenient state courts. *Id* at 19.

Defendant's conduct in the instant case reflects the type of violent conduct for which *Flores-Machicote* authorized upward variances in order to deter it. The basis for the finding in *Flores-Machicote* is that violent individuals that have yet to graduate to firearm-assisted violence need to be deterred before they pass that threshold.

Higher sentences for gun-related offenses ***do have*** a deterrent effect. *See U.S. v. Martinez,* 184 F. Supp. 3d 1209, 1238 (D.N.M.), *aff'd,* 660 F. App'x 659 (10th Cir. 2016) ("[R]esearch strongly indicates that increases in sentence length have at least some general deterrent effect— especially for criminals facing shorter sentences. The Court has arrived at this conclusion on multiple occasions, determining that the "severity of punishment continues to have some deterrent

5

effect—albeit less than it would were the universe of potential criminals an overall rational bunch." *United States v. Courtney*, 2014 WL 7472975, at *32 n. 13 (citing Daniel S. Nagin, Deterrence: A Review of the Evidence by a Criminologist for Economists, 2013 Annual Rev. Econ. 5:83, 86- *1239 88, 97-98 (2013)). *See United States v. Luna–Jasso*, 2015 WL 1006390, at *15–18.");* David S. Abrams, *Estimating the Deterrent Effect of Incarceration Using Sentencing Enhancements*, 4 Am. Econ. J.: Applied Econ. 32 (2012) (empirical study finding that increased sentences for gun-related offenses decrease certain gun violence).

The Government submits that the fact that Defendant was in possession of **a machine gun with an extended ammunition magazine**, which clearly makes that case law applicable to the instant case. "In short, machine guns are highly 'dangerous and unusual weapons' that are not 'typically possessed by law-abiding citizens for lawful purposes.'" *United States v. Henry*, 688 F.3d 637, 640 (9th Cir. 2012), quoting *District of Columbia v. Heller*, 554 U.S. 570, 625, 627 (2008)).

A machine gun—a weapon that poses an "immense danger." *See United States v. O'Brien*, 560 U.S. 218, 230 (2010). The Ninth Circuit recently observed that "[s]hort of bombs, missiles, and biochemicalagents, . . .[there are] few weapons that are more dangerous than machine guns." *Henry*, 688 F.3d at 641 (noting that "[a] modern machine gun can fire more than 1,000 rounds per minute, allowing a shooter to kill dozens of people within a matter of seconds.") **There is simply no conceivably legitimate purpose for Defendant's possession of a <u>machine gun</u>**. Defendant's proven ability to obtain such a dangerous weapon make him a danger to the community.





Moreover, ***the fact that Defendant was studying to become a paramedic makes his possession of a machine gun even more troublesome***. Paramedics are people trained in the field of trying to save lives after a person sustains injuries such as a gunshot wound. Paramedics are exposed in training to the seriousness of such an injury and are aware of the level of tragedy a

7

firearm such as a machine gun can cause to one or more victims. There is no excuse for his behavior in this case. Clearly, Defendant was living a double life. Defendant denied being the owner of the machine gun in this case but admitted that on the day of the instant offense, he was carrying the machine gun from his own mother's house to a "safer location". (PSR at page 5). Thus, Defendant was not in the wrong place at the wrong time. Defendant was a knowing and willing participant in a bigger offense. Defendant was at the very least aiding and abetting someone else in having access to a machine gun for no legitimate purpose. Moreover, *federal agents found photographs of a great amount of firearms and marijuana in Defendant's cellphone*.



In this case, rehabilitation can be achieved through an imprisonment sentence of 24 months that subjects Defendant to the serious consequences of possessing a machine gun but also allows

him to receive proper counseling and training opportunities at the BOP. Thus, despite the evidence to support a variant sentence in this case, the United States asks the Court to impose a sentence of 24 months of imprisonment, which falls within the applicable guideline range. In sum, a sentence of **24 months of imprisonment** will reflect the seriousness of the offense, promote respect for the law, protect the public from further crimes by Defendant, and will adequately address the issues of deterrence and punishment.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 29th day of October, 2018.

**ROSA EMILIA RODRIGUEZ VELEZ**
United States Attorney

*s/Marie Christine Amy*
Marie Christine Amy
Assistant U.S. Attorney
Torre Chardon, Suite 1201
350 Carlos Chardon St.
San Juan, P.R. 00918
Tel. (787) 766-5656
e-mail: marie.c.amy@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on this date, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing to all CM/ECF participants.

                                                          s/Marie Christine Amy  
                                                          Marie Christine Amy